*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0033**

State of Minnesota,
Respondent,

vs.

Michael Robert Dotterweich,
Appellant.

**Filed November 24, 2014
Affirmed
Hudson, Judge**

Ramsey County District Court
File No. 62-CR-13-3918

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stauber, Judge.

**UNPUBLISHED OPINION**

**HUDSON**, Judge

On appeal from his conviction of violation of a domestic abuse no-contact order, appellant argues that the district court committed plain error by not sua sponte striking a

police officer's testimony regarding a victim's statements as (1) inadmissible hearsay, or (2) a violation of appellant's constitutional right to confront witnesses. Because the district court did not commit plain error by not striking the statements, we affirm.

**FACTS**

On June 3, 2013, St. Paul police received a 911 call regarding a disturbance[1] in an intersection. When Officer McGuire arrived on the scene, he observed a woman in the street who did not appear hurt but was upset, agitated, and taking a lot of short breaths. He also saw a man on the corner of the intersection by a bicycle. The woman indicated she was the victim of the disturbance and identified herself to Officer McGuire as J.B. She told Officer McGuire that her boyfriend, "Mike," had come to the house, and her father was upset because Mike had stolen the electrical box off the side of the house. J.B. indicated to Officer McGuire that Mike was the man by the bicycle. Officer McGuire placed J.B. in the back of his squad car. Officer McGuire next questioned the man by the bicycle, handcuffed him, and had him sit on the curb. Other officers arrived, and based on their investigation, determined the man was appellant Michael Dotterweich. An officer transmitted appellant's name through the police department's data channel and learned that an active no-contact order existed that prevented appellant from having any contact with J.B. Appellant was subsequently arrested for violating the no-contact order.

J.B. did not testify at trial. Her statements regarding appellant coming to the house; being her boyfriend; and her father being mad at appellant for stealing the

---

[1] The 911 call was for an alleged assault, but the district court limited all references to the call as a call about a "disturbance."

2

electrical box were admitted without objection through Officer McGuire's testimony. The state utilized J.B.'s statements during closing arguments. The jury found appellant guilty of violating the domestic abuse no-contact order. This appeal follows.

## D E C I S I O N

Although the "[f]ailure to object to the admission of evidence generally constitutes a waiver of the right to appeal on that basis," we may consider evidentiary errors not objected to at trial if there was plain error. *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008).[2] Plain error exists when: (1) there is an error; (2) the error is plain; and (3) the error affects a party's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If those three prongs are met, we then assess whether the error should be addressed to "ensure fairness and the integrity of the judicial proceedings." *Id.* An error is plain if it is clear or obvious. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Plain error has "a high threshold of persuasion," *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999), and the appellant bears the burden of persuasion on the third prong, *Griller*, 583 N.W.2d at 741.

The question of whether the admission of evidence violates the Confrontation Clause is generally reviewed de novo. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006). But, when the admission of testimony was not objected to at trial, plain error analysis is applied to constitutional challenges. *Tscheu*, 758 N.W.2d at 863.

___

[2] The Minnesota Supreme Court recently clarified in *State v. Kelley*, that "plain error is determined at the time of appellate review." ___ N.W.2d ___, 2014 WL 5358361, at *3 (Minn. Oct. 22, 2014). But here, the applicable law has not changed during the pendency of appeal.

3

*Hearsay*

Appellant did not object when Officer McGuire testified about J.B.'s statements. He now claims, however, that the district court committed plain error by not sua sponte striking Officer McGuire's testimony as inadmissible hearsay. Generally, an out-of-court statement that is offered to prove the truth of the matter asserted is hearsay. Minn. R. Evid. 801(c). Hearsay is not admissible unless it falls under an exception to the hearsay rule. Minn. R. Evid. 802. Additionally, "[t]he number and variety of exceptions to the hearsay exclusion make objections to such testimony particularly important to the creation of a record of the trial court's decision-making process in either admitting or excluding a given statement." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). It is undisputed that Officer McGuire's testimony regarding J.B.'s statements was hearsay. But the parties dispute whether the testimony is admissible under the excited utterance hearsay exception.

An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Minn. R. Evid. 803(2). Such a statement must be made under the "aura of excitement caused by the event or condition to insure the trustworthiness of the statement." *State v. Daniels*, 380 N.W.2d 777, 782 (Minn. 1986). Statements made while a person is "extremely agitated, upset and afraid" constitute excited utterances. *State v. Bauer,* 598 N.W.2d 352, 366 (Minn. 1999).

The record sheds little light on the exact circumstances surrounding J.B.'s statements to Officer McGuire. Although appellant was off to the side of the intersection

4

at the time J.B. made the statements to Officer McGuire, appellant was not initially handcuffed or otherwise restrained such that J.B. was in a place of complete safety. And Officer McGuire testified that J.B. was still agitated and taking lots of short breaths. The record is silent as to whether J.B. volunteered her statements or if she made the statements as a result of Officer McGuire's questioning.

Because there was no objection, the district court did not have the opportunity to rule on the admissibility of J.B.'s statements. On this record, we conclude that J.B.'s statements could have been admissible as excited utterances, and the district court did not commit plain error by failing to sua sponte strike these statements as inadmissible hearsay.

*Confrontation Clause*

Appellant next argues his conviction should be reversed because he was denied his constitutional right to confront J.B. Testimonial statements made by an out-of-court declarant violate the Confrontation Clause and are inadmissible in a criminal trial unless the declarant is unavailable[3] and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). In *Davis v. Washington* and its companion case, *Hammon v. Indiana*, the United States Supreme Court articulated the difference between testimonial and nontestimonial statements made to police officers:

---

[3] Here, the state made no attempt to show that J.B. was unavailable to testify. In fact, she appeared at sentencing and apologized for not attending trial due to a transportation problem.

5

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 812, 822, 126 S. Ct. 2266, 2273-74 (2006). Statements that are made to the police at the scene of an initial investigation can be testimonial. *State v. Wright*, 726 N.W.2d 464, 475–76 (Minn. 2007). A statement that is volunteered can also be testimonial. *State v. Warsame*, 735 N.W.2d 684, 692 (Minn. 2007).

Two cases offer guidance in deciding this matter. In *Wright*, two sisters were threatened with a gun by the boyfriend of one of the sisters and gave statements to the police shortly after the boyfriend left the apartment. 726 N.W.2d at 475. These statements were considered testimonial because, at the time of the interviews, the boyfriend was in custody and the emergency was finished, even though one of the victims was "crying and shaking uncontrollably" when the police arrived, and her demeanor did not change throughout the half-hour conversation with the police. *Id*. at 469, 475.

In *Warsame*, the police were called to a disturbance, and when the police officer was approaching the address, prior to the officer getting out of his car or speaking, a woman walking in the middle of the street told the police officer that her boyfriend had beat her up. 735 N.W.2d at 687. The woman had a baseball-sized bump on her head, appeared "wobbly," and was crying. *Id.* She made further statements to the officer in

narrative form as to what happened, with little questioning from the officer. *Id*. at 687–88. During at least some of the victim's statements, the assailant was not in police custody. *Id*. at 688. The supreme court concluded that the assailant's flight and the victim's potential medical condition both constituted ongoing emergencies. *Id*. at 694. The supreme court held that the victim's statements were nontestimonial up until the point that her assailant was apprehended and her medical condition was verified. *Id*. at 696.

As discussed above, here, the record is unclear as to the exact circumstances under which J.B. gave information to Officer McGuire. It is unclear, for instance, whether J.B.'s statements were primarily the result of questioning by Officer McGuire, or whether they were made voluntarily out of her agitation and to address the emergency situation to which the police were called. Although J.B. and the appellant were separated at the time of her statements, he was not initially in custody, and J.B. was agitated and out of breath, standing in the middle of the street. Officer McGuire testified that he "wasn't quite sure who was telling the whole truth or not," and that he ". . . wanted [appellant] to sit on the curb until I had other people, so I could figure out the whole situation." The officers who later responded to assist Officer McGuire offered similar testimony. Thus, a careful review of the transcript reflects that the officers were still in "investigative mode" and trying to sort out a confusing, potentially dangerous 911 call. These facts mirror those in *Warsame* and suggest that J.B.'s statements were nontestimonial.

Appellant additionally argues that J.B.'s statements were testimonial because she knew there was a no-contact order when she told Officer McGuire that appellant came to

her home, and thus she also knew or should have known that her statements would have been used against appellant at a future trial. But it is just as likely that J.B.—who was upset and out of breath—was simply providing the information necessary to address the ongoing emergency. Under these circumstances, we cannot say that the district court committed plain error by not sua sponte striking J.B.'s statements.

Ultimately, we conclude that J.B.'s statements were nontestimonial in nature and made to address the ongoing emergency. Therefore, the district court did not commit plain error by refusing to sua sponte strike them. Because we conclude that the district court did not commit plain error in failing to strike J.B.'s statements sua sponte, we need not reach the issue of whether the admission of J.B.'s statements affected appellant's substantial rights.

**Affirmed.**